# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| DALE M. IRVING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:18-CV-02845-RWS |
| BOARD OF CHOSEN | : | |
| FREEHOLDERS OF | : | |
| BURLINGTON COUNTY, NEW | : | |
| JERSEY and BURLINGTON | : | |
| COUNTY ADJUSTER in his | : | |
| official and individual capacity, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss the Amended Complaint [15] and Plaintiff's Motion to File Excess Pages [16]. After reviewing the record, the Court enters the following Order.

## **Background**

Plaintiff Dale M. Irving filed this lawsuit against the Board of Chosen Freeholders of Burlington County, New Jersey ("Burlington County") and the Burlington County Adjuster ("the Adjuster") for violations of his civil rights and libel.

**I.     Plaintiff's Claims**

Plaintiff alleges that, about 15 years ago, he moved from Burlington County to Gwinnett County, Georgia.  (Am. Compl., Dkt. [12] ¶ 9.)  In 2012, Plaintiff obtained a 5-year "weapons carry license" from the Gwinnett County Probate Court.  (Id. ¶ 11.)  When Plaintiff applied to have his license renewed in 2017, however, he learned that, sometime between then and 2012, "Burlington County had placed with the NICS a derogatory record that Plaintiff had been committed by a court in Burlington County for a mental defect."  (Id. ¶ 13.)  As a result, Plaintiff was not able to renew his license.  (Id.)

Plaintiff alleges that the information in NICS is false and that Defendants are responsible for its dissemination.  (Id. ¶¶ 13, 15.)  Specifically, Plaintiff says that Defendants failed to implement appropriate policies and procedures to prevent commitments that were overturned, like Plaintiff's, from ending up on NICS, and that Burlington County failed to properly train and supervise the Adjuster to prevent the publication of such false information.  (Id. ¶¶ 16, 18–20.)

Based on this conduct, Plaintiff raises claims under 42 U.S.C. § 1983 for violations of his rights under the Second, Fourth, Fifth, and Fourteenth

2

Amendments (Counts 1–5), and a related state-law claim against the Adjuster for libel (Count 6). Defendants now move to dismiss, in part, because the Court lacks personal jurisdiction.

## II. Plaintiff's Jurisdictional Allegations

Plaintiff's Amended Complaint scarcely addresses the Court's personal jurisdiction over Defendants. Aside from claiming "that the events and conduct complained of [in the Amended Complaint] all occurred in the Northern District [of Georgia]," (Am. Compl., Dkt. [12] ¶ 2), Plaintiff provides only the following information: (1) Burlington County is a political subdivision of the State of New Jersey that provides local government services to its residents, (id. ¶ 7); and (2) the Adjuster is a county official responsible for assessing the financial status of those committed to facilities for mental health reasons and also for filing petitions with the courts related to such treatment, (id. ¶ 8).

## III. Defendants' Motion to Dismiss

In support of dismissal, Defendants argue that the Court lacks personal jurisdiction over them and, alternatively, that the Amended Complaint fails to state a claim as a matter of law.

3

In support of its conclusion that the Court lacks personal jurisdiction, Defendants make two claims, supported by affidavit evidence—namely, the sworn testimony of Kendall J. Collins, the current County Solicitor/County Adjuster for Burlington County, (Dkt. [15-3].). First, neither the Adjuster nor Burlington County has sufficient contacts with Georgia to confer personal jurisdiction. Neither of them owns any property in the State. (Id. ¶ 2.) Nor do they transact business in Georgia or have contacts here. (Id. ¶¶ 3–4.)

Second, Defendants contend that the alleged acts or omissions giving rise to Plaintiff's claims occurred in New Jersey, not Georgia. Specifically, Defendants deny the allegations of wrongdoing in Plaintiff's Amended Complaint, but assuming they were true, reason that any failure to train, supervise, or implement policies must have occurred in New Jersey where Defendants are located. (Id. ¶ 7.) And the same is true for the alleged act of placing false and malicious information on Plaintiff's NICS record. (Id.)

## Discussion

**I.   Plaintiff's Motion to File Excess Pages [16]**

As an initial matter, Plaintiff's Motion to File Excess Pages is **GRANTED** as unopposed. The Court has reviewed the parties' submissions in

4

their entirety and will proceed to evaluate them.

## II. Defendants' Motion to Dismiss [15]

As mentioned above, Defendants argue both that the Court lacks personal jurisdiction and that the Amended Complaint fails to state a claim as a matter of law. The Court will begin with the issue of personal jurisdiction, and because that analysis is dispositive, the Court need not address Defendants' remaining arguments. See Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 (11th Cir. 1999) ("[A] court should decide a 12(b)(2) motion to dismiss before a 12(b)(6) motion because 'a court without [12(b)(2)] jurisdiction lacks power to dismiss a complaint for failure to state a claim.'" (quoting Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963))); Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 940 (11th Cir. 1997) ("As a general rule, courts should address issues relating to personal jurisdiction before reaching the merits of a plaintiff's claims.").

### A. Legal Standard: Federal Rule of Civil Procedure 12(b)(2)

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs.

5

Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). If the defendant then "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" Id. (quoting Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)). At that point, the court takes as true any allegations in the complaint that are uncontroverted by the defendants' affidavits or deposition testimony, Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988) (citing Delong v. Washington Mills, 840 F.2d 843, 845 (11th Cir.1988)), while construing all reasonable inferences in favor of the plaintiff for allegations and supporting evidence that "conflict with the defendant's affidavits[.]" Meier, 288 F.3d at 1269.

B.  Analysis

Federal courts "use a two-step inquiry in determining whether the exercise of personal jurisdiction of a non-resident defendant is proper. First [courts] examine whether the exercise of jurisdiction would be appropriate under that state's long arm statute. Second, [courts] examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States

6

Constitution." Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009). "When a federal court uses a state long arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." Lockard v. Equifax, Inc., 163 F.3d 1259, 1265 (11th Cir. 1998).

Relevant for purposes here, the Georgia long-arm statute provides,

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts . . . enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or though an agent, he or she:
>
> (1) Transacts any business within this state; . . . [or]
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .[1]

O.C.G.A. § 9-10-91.

Plaintiff has not alleged that either of the Defendants has contacts in

---

[1] The other provisions of this code section, §§ 9-10-91(2), (4)-(6), are not relevant to this action.

7

Georgia. To the contrary, Plaintiff's allegations make clear that Defendants reside and conduct governmental activities in Burlington County, New Jersey. And, based on the Amended Complaint and Plaintiff's own affidavit, the activities giving rise to Plaintiff's injury occurred in New Jersey, not Georgia. Thus, neither Burlington County nor the Adjuster are subject to personal jurisdiction here under the Georgia long-arm statute.

Under the "transacting business prong" of the long-arm statute, the Court may only exercise personal jurisdiction if "(1) the nonresident defendant has purposefully done some act or consummated some transaction in [Georgia], (2) the cause of action arises from or is connected with such act or transaction, and (3) the exercise of jurisdiction . . . does not offend traditional fairness and substantial justice." Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006) (emphasis added). Defendants do no transact business in Georgia; they "provide local government services to the resident[s]" of Burlington County, New Jersey. (Am. Compl., Dkt. [12] ¶¶ 7–8.) In fact, Defendants do not appear to have had any contacts with Georgia, at all. (See generally Dkt. [15-3].) Plaintiff also does not allege that his § 1983 or libel claims arose from Defendants' activities here, as required under the statute.

8

See Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1267 (11th Cir. 2010) (explaining that "there must be a sufficient nexus between those contacts [in the forum state] and the litigation" for personal jurisdiction to be proper). Rather, the alleged wrongdoing—mainly, placing false information in Plaintiff's NICS file—took place in New Jersey. As such, the exercise of personal jurisdiction over Defendants is plainly not authorized under the "transacting business prong" of Georgia's long-arm statute.

Nor does the Court have personal jurisdiction under subsection (3) of the long-arm statute. According to that provision, a "court may exercise personal jurisdiction over a nonresident who commits a tortious injury in Georgia caused by an act or omission outside of Georgia only if the tortfeasor 'regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state' . . . ." Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames, 620 S.E.2d 352, 354 (Ga. 2005) (quoting Gust v. Flint, 356 S.E.2d 513 (Ga. 1987)).

"Subsection (3)'s first requirement is the existence of a tortious injury. Kason Indus., Inc. v. Dent Design Hardware, Ltd., 952 F. Supp. 2d 1334, 1347

(N.D. Ga. 2013). Here, Plaintiff has successfully alleged such an injury—he was wrongly said to have been involuntarily committed for a "mental defect" and as a result denied a firearm license in Georgia. The alleged out-of-state actions that caused this in-state injury is also clear. Plaintiff alleges that, amongst other failures, Defendants (whether purposefully or recklessly) placed this false information in Plaintiff's NICS file. As both Defendants are located in New Jersey, this alleged misconduct would have occurred there, not in Georgia.

However, Plaintiff has failed to satisfy the final requirement under subsection (3) because neither Defendant derives substantial revenue—or, it seems, any revenue whatsoever—from Georgia. As such, the exercise of personal jurisdiction over Defendants is plainly not authorized under the Georgia long-arm statute.[2]

---

[2] Even were jurisdiction proper under Georgia's long-arm statute, Plaintiff would still have to show that the exercise of jurisdiction would not violate Defendants' rights under the Due Process Clause. Plaintiff cannot meet that burden. In brief, the Court is unable to assert general jurisdiction over Defendants because they do not have affiliations with Georgia so "'continuous and systematic' as to render them essentially at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citing International Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). In fact, as explained above, Plaintiff has not shown that Defendants had any contact with the State, at all. And for that same reason

10

The Eleventh Circuit makes clear that when a district court lacks personal jurisdiction, it may not evaluate the merits of a case. See Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1250 (11th Cir. 2000) (personal jurisdiction analysis does not require a determination on the merits); Republic of Panama, 119 F.3d at 940. Rather than automatically dismissing a case for lack of personal jurisdiction, however, the courts have

---

(plus others the Court need not delve into), Burlington County cannot be subject to specific personal jurisdiction. Diamond Crystal Brands, 593 F.3d at 1267 (explaining that a plaintiff must show that a defendant has "minimum contacts" with the forum state, which requires the plaintiff to demonstrate that the defendant "purposefully availed" itself of the privilege of conducting activities in the forum state such that it "should reasonably anticipate being haled into court there" (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474–476 (1985))). Nor would the Court have specific personal jurisdiction over the Adjuster, despite Plaintiff charging the Adjuster with an intentional tort. To determine whether the Due Process Clause allows a court to exercise personal jurisdiction over nonresident defendants charged with an intentional tort like libel, "[t]he Eleventh Circuit applies the Calder effects test." Gregory v. Mihaylov, No. 1:12-cv-2266-TWT, 2013 WL 75773, at *6 (N.D. Ga. Jan. 4, 2013). "Under the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, *but mere untargeted action or a fortuitous result will not*." Licciardello v. Lovelady, 544 F.3d 1280, 1286 n.6 (11th Cir. 2008) (emphasis added) (citing Calder v. Jones, 465 U.S. 783, 788–90 (1984)). Here, the undisputed facts are that Plaintiff's commitment was inadvertently entered as "involuntary" while back loading paper documents into a new software application. (See Dkt. [15-2].) This was done in New Jersey and focuses on events in New Jersey while Plaintiff lived there (inaccurate though the description of those events may be). The Adjuster did not "expressly aim" the information entered into NICS at Georgia or have any reason to believe that some harm—much less the "brunt of the harm"—would be felt here. Calder, 465 U.S. at 788–90.

11

discretion to transfer a case to a district that does have personal jurisdiction over the nonresident defendants. Although the parties do not discuss the possibility of transfer, the Court finds transfer to be appropriate here.

Under 28 U.S.C. § 1631, if a district court finds that it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed . . . ." The Court recognizes that, although § 1631 clearly applies when subject matter jurisdiction is lacking, courts are divided on whether § 1631 also allows transfer of a case to cure a lack of personal jurisdiction. See Brown v. Ford Motor Co., 347 F. Supp. 3d 1347, 1351 (N.D. Ga. 2018). However, many courts at both the appellate and district levels have found such transfers appropriate. See, e.g., Johnston v. Wilkins, 709 F. App'x 404, 405 (8th Cir. 2018) ("[D]istrict court should have considered whether the interest of justice required it to transfer the claim against [defendant] to the Northern District of Oklahoma (where the conduct occurred) rather than dismiss it."); Fed. Home Loan Bank of Bos. v. Moody's Corp., 821 F.3d 102 (1st Cir. 2016), abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553 (2017); Freedman v. Suntrust Banks, Inc., 139 F. Supp. 3d 271 (D.D.C.

12

2015). And—significant for present purposes—the Eleventh Circuit is yet to definitively decide this issue.

Alternatively, a number of courts have used a different provision—28 U.S.C. § 1406—to transfer cases even though the court does not have personal jurisdiction. Under § 1406(a), when a case is filed in the wrong district, a district court may transfer the case to another district if the case could have originally been brought there. See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought."). And "[t]his power," it has been said, "exists even when the transferor court lacks personal jurisdiction over the defendant." Howell v. Komori Am. Corp., 816 F. Supp. 1547, 1552 (N.D. Ga. 1993).

Here, it appears that both Defendants would be subject to personal jurisdiction in New Jersey. Burlington County is a public entity and political subdivision of New Jersey, and the Adjuster is a public official there. Moreover, all the events giving rise to Plaintiff's causes of action took place in New Jersey, and New Jersey law would apply to Plaintiff's libel claim. Finally,

13

it is in the interest of justice to transfer the case rather than dismiss it because it will save Plaintiff—a *pro se* litigant—time and expense in refiling the case in New Jersey. Therefore, instead of dismissing Plaintiff's action, the Court will transfer Plaintiff's entire case to the U.S. District Court for the District of New Jersey.

## Conclusion

For the foregoing reasons, Plaintiff's Motion to File Excess Pages [16] is **GRANTED**, and Defendants' Motion to Dismiss the Amended Complaint [15] is also **GRANTED**. The Clerk is **DIRECTED TO TRANSFER** the entire case to the U.S. District Court for the District of New Jersey.

**SO ORDERED**, this 26th day of February, 2019.

_____
**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)