**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

DALE M. IRVING,                              Civil Action No. 19-07276

        Plaintiff,

                                        **OPINION**

    v.

BOARD OF CHOSEN FREEHOLDERS
OF BURLINGTON COUNTY, et al.,

        Defendants.

_____

<u>**APPEARANCES**</u>:

DALE M. IRVING
939 CREEK COVE WAY
LOGANVILLE, GA 30052
    _Plaintiff appearing pro se_

MICHAEL PAUL MADDEN
REGINA MCKENNA PHILIPPS
MADDEN & MADDEN, PA
108 KINGS HIGHWAY EAST
SUITE 200
PO BOX 210
HADDONFIELD, NJ 08033-0389

    _Counsel for Defendants Burlington County New Jersey,_
    _Burlington County Adjuster, Board of Chosen Freeholders of_
    _Burlington County New Jersey, Evan C. Crook_

KATHRYN ANN RIVERA
PARKER MCCAY, P.A.
9000 MIDLANTIC AVE.
SUITE 300
MOUNT LAUREL, NJ 08054

    _Counsel for Defendant Virtua Memorial Hospital_

JESSICA ANN SAMPOLI
OFFICE OF THE ATTORNEY GENERAL OF NJ
25 MARKET ST, 7TH FL, WEST WING
PO BOX 116
TRENTON, NJ 08625

    *Counsel for Third-Party Defendant the State of New Jersey*
    *Administrative Offices of the Courts*

**<u>HILLMAN</u>, District Judge**

    Plaintiff has brought suit against Defendants Board of Chosen Freeholders of Burlington County, New Jersey ("Defendant County"), Evan H.C. Crook ("The County Adjuster" or "County Adjuster"), and Virtua—Memorial Hospital of Burlington County, Inc. ("Defendant Virtua"), improperly pleaded as "Virtua Memorial Hospital", (collectively "Defendants"), alleging that among other things, Defendants violated Plaintiff's constitutional rights.  (ECF No. 55.)

    In addition, Defendant County and the County Adjuster (collectively "Third-Party Plaintiffs") filed a Third-Party Complaint against the State of New Jersey Administrative Office of the Courts ("NJAOC") and John Does 1-10, currently unidentified employees of the NJAOC, (collectively "Third-Party Defendants").  (ECF No. 61.)  This matter comes before this Court on Defendant Virtua's Motion to Dismiss and NJAOC's Motion to Dismiss. (ECF Nos. 67 and 75).  For the reasons stated below, the Court will grant Defendant Virtua's Motion to Dismiss and will also grant NJAOC's Motion to Dismiss.

**BACKGROUND**

The Court takes its brief recitation of the facts from
Plaintiff's Third Amended Complaint.  (ECF No. 55 "TAC".)
Plaintiff resided in Burlington County between June 1999 and
July 2003 and then moved to Georgia.  (TAC ¶9.)  On September
17, 2000, Plaintiff and his former wife had an argument in the
morning and later that evening Plaintiff was arrested and then
transported directly to Virtual Memorial Hospital.  (TAC ¶14.)
Plaintiff alleges he was beaten, physically and chemically
restrained while at Virtua Memorial Hospital.

Following this, Plaintiff was then transported to
Buttonwood Hospital, a psychiatric facility.  (TAC ¶15.)
Plaintiff explains that the "Psychiatrist who signed the
screening certificate permitting Plaintiff's transfer to the
locked facility had not spoken to Plaintiff once, nor any member
of Plaintiff's family before signing the screening certificate."
(TAC ¶15.)  Plaintiff argues the screen certificate was "signed
to coverup the beating, physical restraint, chemical restraint
and drawing of Plaintiffs blood against his wishes."

Plaintiff explains that in "an effort to protect Defendant
Virtua from the legal repercussions associated with its conduct,
[the County Adjuster] perpetuated the myth that Plaintiff was
committed." (TAC ¶16.)  Plaintiff alleges The County Adjuster
failed to review Plaintiff's file for accuracy and completeness

3

and that such a review would have informed The County Adjuster that "there was only one screening certificate in Plaintiffs [sic] file and the psychiatrist who signed the certificate had not spoken to Plaintiff, or any member of Plaintiffs [sic] family, and there was no document requesting a screening before Plaintiff was brought to Virtua Memorial Hospital."  (TAC ¶16.)

Plaintiff contends the County Adjuster entered Plaintiff's information into Burlington County's computer system as an individual "who had been committed or adjudicated mentally incompetent" and that this was done "in further effort to cover for Virtua's beating, physical restraint, chemical restraint and withdrawal of Plaintiffs blood without consent."  (TAC ¶17.) Plaintiff alleges the County Adjuster's continued participation in covering up Defendant Virtua's actions included "gathering evidence on behalf of Virtua to ensure Plaintiff was denied any legal relief for the unlawful activity of Virtua."  (TAC ¶18.) After Plaintiff's information was placed on the local computer system, the information was placed on the Civil Commitment Automated Tracking System (CCATS), which in turn is automatically sent to the New Jersey State Police to be placed on the National Instant Criminal Background Check System ("NICS").

In March 2012, Plaintiff was granted a weapons carry license by the state of Georgia.  (TAC ¶11.)  Plaintiff's

attempt to renew his license in August 2017 was denied because
the Defendant County "placed with the NICS a derogatory record
that Plaintiff had been committed by a court in The County for a
mental defect."  Plaintiff alleges this was and is a false
statement.  (TAC ¶12-13.)

Following the filing of Plaintiff's Third Amended
Complaint, Third-Party Plaintiffs filed a Third-Party Complaint
against Third-Party Defendants.  (ECF No. 61.)  Third-Party
Plaintiffs allege that CCATS was a software database instituted
and maintained by NJAOC and that temporary workers employed by
NJAOC "were responsible for the entry of information into CCATS,
including but not limited to the entry of information pertaining
to" Plaintiff. (ECF No. 61 at 12.)  Third-Party Plaintiffs
allege that NJAOC is responsible for the entry of erroneous
information, if any, into CCATS pertaining to Plaintiff and thus
they seek contribution and indemnification from Third-Party
Defendants arising from Plaintiff's claims.  (Id.)

In addition, Third-Party Plaintiffs bring contractual
claims against Third-Party Defendants arguing that "[t]o the
extent erroneous information pertaining to plaintiff, Dale
Irving, was entered into CCATS, third-party defendant, State of
New Jersey Administrative Office of the Courts, breached their
express or implied contractual obligations to" them.  (Id. at
12-13.)

5

## DISCUSSION

### A.   Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this case because it presents a federal question under 42 U.S.C. 1983. See 28 U.S.C. § 1331.[1]

### B.   Legal Standards

#### a. Standard for Dismissal under Rule 12(b)(1)

Because "[t]he Eleventh Amendment is a jurisdictional bar

---

[1] Defendant Virtua argues subject matter jurisdiction has not been established over Defendant Virtua because Plaintiff's Section 1983 claim is not "pled against Defendant Virtua and/or does not state a claim for legal relief; and, as such, subject matter jurisdiction cannot be established over Defendant Virtua." (ECF No. 69 at 15.)  This Court rejects Defendant Virtua's argument because this Court has previously held "it is clear that this court may exercise supplemental jurisdiction over state law claims involving defendants against whom no federal cause of action is stated, as long as a federal cause of action is stated against another defendant, and the state law claims satisfy the 'same case or controversy' requirement of Article III." Lentz v. Mason, 961 F. Supp. 709, 717 (D.N.J. 1997).  To determine whether a claim is part of the "same case or controversy," this court looks to whether "the state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Thus, "if considered without regard to their state or federal character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then . . . there is power in the federal court to hear the whole." Id.  Defendant Virtua provides no analysis demonstrating why Plaintiff's claims against Defendant Virtua are not part of the same case or controversy as the federal claims over which this Court has original jurisdiction.  This Court agrees such federal claims and claims against Defendant Virtua arise from the same common nucleus of operative facts as they relate to Defendant Virtua's alleged actions that ultimately led to Plaintiff being unable to renew his weapons carrying license.

which deprives federal courts of subject matter jurisdiction," NJAOC's motion is, in part, a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996).

Typically, once a Rule 12(b)(1) challenge is raised, the burden shifts to the plaintiff to demonstrate the existence of subject matter jurisdiction. See McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006). "However, because 'Eleventh Amendment immunity can be expressly waived by a party, or forfeited through non-assertion, it does not implicate federal subject matter jurisdiction in the ordinary sense,' and therefore, a party asserting Eleventh Amendment immunity bears the burden of proving its applicability." Garcia v. Knapp, No. 19-17946, 2020 WL 2786930, at *3 (D.N.J. May 29, 2020) (quoting Christy v. PA Tpk. Comm., 54 F.3d 1140, 1144 (3d Cir. 1994)).

In deciding a Rule 12(b)(1) motion, "a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed." Leadbeater v. JPMorgan Chase, N.A., No. 16-7655, 2017 WL 4790384, at *3 (D.N.J. Oct. 24, 2017). "When a party moves to dismiss prior to answering the complaint . . . the motion is generally considered a facial attack." Id.; see also Garcia, 2020 WL 2786930, at *4 ("Defendants, by asserting

7

Eleventh Amendment immunity, raise a facial 12(b)(1) challenge."). In reviewing a facial attack, the Court should consider only the allegations in the complaint, along with documents referenced therein and attached thereto, in the light most favorable to the nonmoving party. See Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014).

Thus, a facial motion is handled much like a 12(b)(6) motion, and allegations in the complaint are accepted as true. Leadbeater, 2017 WL 4790384, at *3. Here, the Court will consider NJAOC's motion to be a facial attack on the claims against it and therefore accepted the alleged facts in the Third Party Complaint as true.

### b. Standard for Dismissal under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a motion under Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the pleader. Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005); see also Philips v. Cty. Of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) ("[I]n deciding a motion under Fed. R. Civ. P. 12(b)(6), [a district court is] . . . required to accept as true all factual allegations in the complaint and draw all inferences

from the facts alleged in the light most favorable to" the
plaintiff).  A pleading is sufficient if it contains a "short
and plain statement of the claim showing that the pleader is
entitled to relief."  FED. R. CIV. P. 8(a)(2).  "Although *pro se*
complaints are subject to liberal construction, such
construction does not displace the requirement that complaints
must comply with Rule 8(a)(2)."  Caterbone v. Nat'l Sec. Agency,
No. 17-867, 2017 WL 1150643, at *6 (E.D. Pa. Mar. 28, 2017)
(citing Parker v. Learn the Skills Corp., No. 03-6936, 2004 WL
2384993, at *3 (E.D. Pa. Oct. 25, 2004)).

When weighing a motion to dismiss, the Court does not ask
"whether a plaintiff will ultimately prevail, but whether the
claimant is entitled to offer evidence to support the
claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 n.8
(2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974));
see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions.'") (citations omitted).

In applying the Twombly/Iqbal standard, a district court
will first "accept all of the complaint's well-pleaded facts as
true, but may disregard any legal conclusion."  Fowler v. UPMC
Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal,
556 U.S. at 678).  Next, the Court will "determine whether the
facts alleged in the complaint are sufficient to show that the

9

plaintiff has a 'plausible claim for relief.'"  Id. at 211
(citing Iqbal, 556 U.S. at 679).

   To meet this standard, a "complaint must do more than
allege the plaintiff's entitlement to relief."  Id.; see also
Philips, 515 F.3d at 234 ("The Supreme Court's Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest' the required element. This
'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element.") (citing Twombly, 550 U.S at 556).  The
party moving to dismiss under 12(b)(6) "bears the burden of
showing that no claim has been presented."  Hedges v. United
States, 404 F.3d 744, 750 (3d Cir. 2005).

   **C. Analysis**

   **a. Defendant Virtua's Motion to Dismiss**

   Defendant Virtua makes several arguments in support of its
Motion to Dismiss.  Because this Court agrees that the
conspiracy and punitive damages claims against Defendant Virtua
must be dismissed because (1) Plaintiff has failed to allege a
plausible claim that Defendant Virtua, a private party, was a
joint participant in a conspiracy with the County Adjuster; and
(2) Plaintiff has failed to plead a viable underlying cause of

action for the award of punitive damages this Opinion does not address Defendant Virtua's additional arguments.

### i. Plaintiff's Conspiracy Claim against Defendant Virtua

Defendant Virtua argues Plaintiff's conspiracy claim against it must be dismissed because a conspiracy claim is a dependent claim and there is no underlying viable cause of action that forms the basis of Plaintiff's conspiracy claim. (ECF No. 67 at 16-17.)   In response, Plaintiff clarifies that the underlying cause of action is a violation of 42 U.S.C. 1983. (ECF No. 68 at 6-9.)   Plaintiff further explains this is a viable underlying claim because Virtua was a state actor for purposes of his Section 1983 conspiracy claim.   (ECF No. 68 at 14-15.)   More specifically, Plaintiff contends Defendant Virtua should be treated as a state actor because the TAC sufficiently alleges Defendant Virtua acted in a conspiracy with a state official to deprive Plaintiff of his constitutional rights. (Id.)   Defendant Virtua responds that Plaintiff's Section 1983 conspiracy claim should be dismissed because it is not a person subject to suit under Section 1983 and Plaintiff failed to plead sufficient allegations that it acted in concert with the County Adjuster to deprive Plaintiff of his constitutional rights. (ECF No. 69 at 8-12.)   This Court agrees with Defendant Virtua.

Section 1983 allows a plaintiff to bring a private cause of

action for certain violations of his constitutional rights.

Section 1983 provides the following:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory ... subjects, or causes
> to be subjected, any citizen of the United
> States or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress[.]

In order to state a claim for relief under section 1983, a
plaintiff must allege two elements: (1) "the violation of a
right secured by the Constitution or laws of the United States";
and (2) "the alleged deprivation was committed or caused by a
person acting under color of state law." Renwick v. U.C. Med.
Dept., No. 10-6272, 2011 WL 1883810, at *2 (D.N.J. May 11, 2011)
(citing West v. Atkins, 487 U.S. 42, 48 (1988)).  Although
Defendant Virtua is not a state actor, as it is privately owned,
"a private party who willfully participates in a joint
conspiracy with state officials to deprive a person of a
constitutional right acts 'under color of state law' for
purposes of §1983" and can thus be held liable. Abbott v.
Latshaw, 164 F.3d 141, 147-8 (3d Cir. 1998).  "[T]o properly
plead an unconstitutional conspiracy, a plaintiff must assert
facts from which a conspiratorial agreement can be inferred."
Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d

12

159, 178 (3d Cir. 2010).  "A conspiracy is not parallel conduct

by different parties; it must embody, at its heart, 'an

agreement between the defendants and state officials—a 'meeting

of the minds'—to violate the plaintiff's rights.'"  Lentz v.

Taylor, No. 17-4515, 2019 WL 1091392, at *6 (D.N.J. Mar. 8,

2019) (quoting Chambers v. Phila. Media Network, No. 11-6589,

2013 WL 4857995, at *3 (E.D. Pa. Sept. 12, 2013)).

But the law is clear that the Plaintiff must plead more

than legal conclusions of a conspiracy or agreement.  Rather,

for his complaint to survive a motion to dismiss, he must plead

"'enough factual matter (taken as true) to suggest that an

agreement was made,' in other words, 'plausible grounds to infer

an agreement.'"  Great W. Mining, 615 F.3d at 178 (quoting

Twombly, 550 U.S. at 556).

Plaintiff directs this Court's attention to the following

allegations to support a finding that Defendant Virtua

affirmatively participated in the conspiracy:

> 1. Evan H. C. Crook was the County Adjuster for The
>    County at the time of this incident. In an effort to
>    protect Defendant Virtua from the legal repercussions
>    associated with its conduct, Mr. Crook perpetuated
>    the myth that Plaintiff was committed. This,
>    notwithstanding his office being informed on
>    September 21, 2000 that Plaintiff had been discharged
>    from Button Wood Hospital, and his duty pursuant to
>    New Jersey Administrative Codes to review Plaintiffs
>    [sic] file for accuracy and completeness. This
>    ministerial review would have promptly informed Mr.
>    Crook there was only one screening certificate in
>    Plaintiffs [sic] file and the psychiatrist who signed

13

the certificate had not spoken to Plaintiff, or any member of Plaintiffs [sic] family, and there was no document requesting a screening before Plaintiff was brought to Virtua Memorial Hospital. (Id. ¶16);

2. Evan H. C. Crook then using the cloak of his official capacity as the County Adjuster caused Plaintiffs information to be entered into the County's local computer system as one who had been committed or adjudicated mentally incompetent. This was done in further effort to cover for Virtua's beating, physical restraint, chemical restraint and withdrawal of Plaintiffs blood without consent. (Id. ¶17);

3. Mr. Crook's continued participation in this coverup of unlawful activity by Virtua included, gathering evidence on behalf of Virtua to ensure Plaintiff was denied any legal relief for the unlawful activity of Virtua. (Id. ¶18);

4. Notwithstanding statutory duty to investigate, the County Adjuster, Mr. Crook recklessly disregarded his duty to Plaintiff, acted with a conscious disregard for the consequences of his action when he published falsely that Plaintiff had been adjudicated or committed for a mental defect nationally. Further, Mr. Crook acted in concert with Virtua Memorial Hospital of Burlington County in an effort to protect them from liability. (Id. ¶48);

5. On or about September 21, 2000 Defendants Board of Chosen Freeholders of Burlington County, New Jersey were informed by Buttonwood Hospital that Plaintiff had not been committed. Knowing that Plaintiff's rights were violated at Virtua Memorial Hospital a decision was made to enter Plaintiff in the local computer system as being committed. This was done to protect Defendant Virtua Memorial Hospital from legal liability for violating Plaintiff's rights. (Id. ¶51.)

(ECF No. 68 at 15.)

Defendant Virtua clarifies that Plaintiff's allegation that the County Adjuster was gathering evidence might prove favorable

to Virtua relates to a litigation subpoena in 2002 between
Defendant Virtua's lawyer and Buttonwood Hospital, which the
County Adjuster provided responses to.[2]   (ECF No. 69 at 7-8.)
Even construing Plaintiff's pro se complaint liberally, this
Court finds the Third Amended Complaint does not provide any
basis for inferring that the County Adjuster made the above
actions as part of an agreement with Defendant Virtua to deprive
Plaintiff of his constitutional rights.

Indeed, the Third Amended Complaint essentially boils down
to the main allegation that the County Adjuster acted "in
concert with Virtua Memorial Hospital of Burlington County in an
effort to protect them from liability."  Such a "conclusory
allegation of agreement . . . does not supply facts adequate to
show illegality" under the Rule 12(b)(6) standard.  Great W.
Mining, 615 F.3d at 176 (quoting Twombly, 550 U.S at 557); see
also Kitko v. Young, 575 Fed. App'x 21, 27 (3d Cir. 2014)

---

[2] This Court may consider the copy of the 2002 subpoena and
responsive letter Defendant Virtua provided for the Court's
review because it is an integral or explicitly relied upon
document in forming the basis for his Complaint.  See In re
Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d
Cir. 1997) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194,
1220 (1st Cir. 1996) ("As a general matter, a district court
ruling on a motion to dismiss may not consider matters
extraneous to the pleadings. However, an exception to the
general rule is that a 'document integral to or explicitly
relied upon in the complaint' may be considered 'without
converting the motion [to dismiss] into one for summary
judgment.'")).

(citing Great W. Mining, 615 F.3d at 176) (affirming the
dismissal of pro se Plaintiff's complaint and finding
allegations that the defendant acted "in furtherance of [a]
concerted scheme, plan, design and effort" were conclusory
allegations of an agreement that were insufficient to satisfy
the Rule 12(b)(6) standard).

Plaintiff simply fails to allege facts that sufficiently
support any meeting of the minds that Virtua and the County
Adjuster intended to or did work together for the purpose of
depriving Plaintiff of his rights.  See Great W. Mining, 615
F.3d at 178-79 ("Great Western has failed to allege except in
general terms the approximate time when the agreement was made,
the specific parties to the agreement (i.e., which judges), the
period of the conspiracy, or the object of the conspiracy.").
Accordingly, Plaintiff's conspiracy claim against Defendant
Virtua will be dismissed because Defendant Virtua is neither a
state actor nor fits into the joint participant exception to the
state actor requirement.

### ii. Plaintiff's Punitive Damages Claim Against Defendant Virtua

Defendant Virtua argues Count VI for punitive damages must
be dismissed because it is not a separate cause of action and
instead is a form of damages and Plaintiff has failed to plead a
viable underlying cause of action for the award of these

16

damages.  Defendant Virtua further argues the allegations in the
TAC do not meet the heightened standard warranting punitive
damages.  (ECF No. 67 at 26-27.)  Plaintiff responds that
punitive damages is warranted here because Defendant Virtua
acted either with an evil motive or at least with reckless
disregard when committing the underlying conspiracy.  (ECF No.
68 at 16.)  This Court agrees with Defendant Virtua.

In light of the fact that all of the Plaintiff's other
claims against Defendant Virtua have been dismissed, punitive
damages are unavailable.  See Muraveva v. City of Wildwood, No.
17-916, 2018 WL 6617266, at *11 (D.N.J. Dec. 18, 2018) ("A
request for punitive damages is 'similar to a derivative claim'
and is, therefore, a 'separate but dependent claim for relief.'
In re Collins, 233 F.3d 809, 811 (3d Cir. 2000).  Because all of
Plaintiff's substantive claims will be dismissed, there can be
no liability for punitive damages and her claim for punitive
damages must be dismissed as well."); see also Onyejekwe v. Uber
Techs., Inc., No. 19-10196, 2020 WL 2832566, at *3 (D.N.J. June
1, 2020) (quoting Hassoun v. Cimmino, 126 F. Supp. 2d 353, 372
(D.N.J. 2000) ("[T]he Court notes that '[p]unitive damages are a
remedy incidental to [a] cause of action, not a substantive
cause of action in and of themselves.' Accordingly, the Court
dismisses Count VIII for punitive damages because Plaintiffs
improperly assert their request for punitive damages as a

17

separate cause of action.")).  Thus, this Court will dismiss
Plaintiff's punitive damages claim against Defendant Virtua.

### b. NJAOC's Motion to Dismiss

#### i. Sovereign Immunity

NJAOC argues Third-Party Plaintiffs' claims for
contribution and indemnification of Plaintiff's constitutional
claims must be dismissed because NJAOC is entitled to sovereign
immunity and therefore shielded from Plaintiff's constitutional
claims.  (ECF No. 75-1 at 8-12.)  In response, Third-Party
Plaintiffs do not put forth a substantive argument for why NJAOC
is not entitled to dismissal for claims related to Plaintiff's
constitutional claims pursuant to the sovereign immunity
doctrine.  Instead, Third-Party Plaintiffs simply contend that
"[i]n the event the Court determines the AOC is entitled to
sovereign immunity under the Eleventh Amendment," any order
dismissing the constitutional claims against the NJAOC should be
limited to the NJAOC and not include any currently unnamed
NJAOC's employees in their "individual capacity."  Third-Party
Plaintiffs clarify that the unnamed employees of the NJAOC they
wish to sue in their individual capacity are currently
identified as "John Does" and that they intend to ascertain the
identity of these individuals through discovery.  (ECF No. 79 at
17-20.)  NJAOC has failed to respond to this request.

Plaintiff has brought several constitutional claims against

Third-Party Plaintiffs.  Third-Party Plaintiffs filed the

instant Third-Party Complaint against NJAOC seeking

indemnification and contribution if Plaintiff's constitutional

claims are successful.  Third-Party Plaintiffs' contribution and

indemnification claims arising from Plaintiff's constitutional

claims, however, are barred by the Eleventh Amendment to the

U.S. Constitution.  The Eleventh Amendment provides:

> The Judicial power of the United states shall not be
> construed to extend to any suit in law or equity, commenced
> or prosecuted against one of the United States by Citizens
> of another state, or by Citizens or Subjects of any Foreign
> state.

U.S. Const. amend. XI.  "'That a state may not be sued without

its consent is a fundamental rule of jurisprudence having so

important a bearing upon the construction of the Constitution of

the United States that it has become established by repeated

decisions of this court that the entire judicial power granted

by the Constitution does not embrace authority to entertain a

suit brought by private parties against a state without consent

given.'"  Pennhurst state Sch. & Hosp. v. Halderman, 465 U.S.

89, 98 (1984) (quoting Ex parte state of New York No. 1, 256

U.S. 490, 497 (1921)).  The Supreme Court in Hans v. Louisiana,

134 U.S. 1 (1890), "extended the Eleventh Amendment's reach to

suits by in-state plaintiffs, thereby barring all private suits

against non-consenting states in federal court."  Lombardo v.

Pa. Dep't of Pub. Welfare, 540 F.3d 190, 194 (3d Cir. 2008).

Thus, constitutional claims in federal court may only be asserted against a "person" and not the state, which includes state courts, state agencies, and state actors sued in their official capacities. See Robinson v. New Jersey Drug Court, No. 17-7135, 2018 WL 3455480, at *3 (D.N.J. 2018) (citing Callahan v. City of Phila., 207 F.3d 668, 673 (3d Cir. 2000)) (noting that courts have routinely held that the state judiciary is not a "person" under § 1983); Beightler v. Office of Essex County Prosecutor, 342 F. App'x 829, 832 (3d Cir. 2009) (quoting Fitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 658 (3d Cir. 1989) (en banc)) (providing that the Eleventh Amendment protects state agencies when "'the state is the real party in interest'"); Will v. Michigan Dept. of state Police, 491 U.S. 58, 71 (1989) (holding that neither a state nor its officials acting in their official capacities are "persons" under § 1983); Grohs v. Yatauro, 984 F. Supp. 2d 273, 280 (D.N.J. 2013) (citing Will, 491 U.S. at 65–66) ("The state's sovereign immunity [] is preserved under Section 1983; a state is therefore not a 'person' who may be sued under Section 1983.").

Here, this Court agrees NJAOC is an arm of the State and therefore entitled to sovereign immunity. See Newton v. New Jersey, No. 15-6481, 2017 WL 27457, at *4 (D.N.J. Jan. 2, 2017) (citing Johnson v. State of New Jersey, 869 F. Supp. 289, 298 (D.N.J. 1994) ("holding that defendant, the Administrative

20

Office of the Courts, is entitled to Eleventh Amendment immunity from a suit for money damages")); Dongon v. Banar, No. 08-5331, 2009 WL 10695064, at *2 n.3 (D.N.J. July 22, 2009) (citing Johnson, 869 F. Supp. at 296) ("The Superior Court of New Jersey, its vicinages and the New Jersey Administrative Office of the Courts are part of the judicial branch the State of New Jersey and are considered 'arms' of the state of New Jersey. Therefore, they are protected from any claim for damages by virtue of the Eleventh Amendment, which grants the State sovereign immunity. As such, the claims against the Superior Court and the New Jersey Administrative Office of the Courts will be dismissed, with prejudice."); Johnson, 869 F. Supp. at 298 ("[T]he Court finds that the Administrative Office of the Courts can cloak itself in the state's sovereign immunity under the Eleventh Amendment.").

Accordingly, Count I of the Third-Party Complaint against NJAOC is barred under the Eleventh Amendment to the extent it seeks indemnification and contribution from liability arising from Plaintiff's constitutional claims.  Nevertheless, this Court agrees such dismissal must be limited to the NJAOC and employees acting in their official capacity and should not include the currently unnamed NJAOC employees that Third-Party Plaintiffs seek to identify through discovery.  See Munchinski v. Soloman, 618 Fed. App'x 150, 156 (3d Cir. 2015)("The Eleventh

Amendment does not, however, bar suits against officials in their individual capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties.'"); Neals v. Stromberg, No. 16-7141, 2020 WL 5088226, at *18 n.17 (D.N.J. Aug. 28, 2020) (citing Hafer v. Melo, 502 U.S. 21, 31 (1991))(dismissing the "officially capacity" claims against a Defendant Commissioner, but rejecting the argument that all claims arising from his "official acts" were "'official capacity claims.'")).

### ii. Notice of Claim under the Tort Claims Act and Contractual Liability Act

NJAOC argues Third-Party Plaintiffs' contractual claims should be dismissed for failure to timely file a Notice of Claim pursuant to the Contractual Liability Act ("CLA"). (ECF No. 75-1 at 13-16.) NJAOC further argues that, even though this Court must dismiss Third-Party Plaintiffs' contractual claims, "AOC must be treated as a settling defendant" because "[t]reating the dismissed public entity as a settling defendant protects the public entity as intended by the CLA." (ECF No. 75-1 at 16-18.)

In response, Third-Party Plaintiffs argue they have timely served a Notice of Claim upon the NJAOC with respect to the Third-Party claims arising out of Plaintiff's civil conspiracy claims. This is because the Plaintiff did not plead a claim for civil conspiracy until his Third Amended Complaint on May 12,

2020 and the Third-Party Plaintiffs' Notice of Claim was served
on the NJAOC on or about July 15, 2020.  (ECF No. 79 at 11-13.)
In relation to Third-Party Plaintiffs' claims arising out of
Plaintiff's libel claims and their contractual third-party
claims, Third-Party Plaintiffs argue that if such claims are
dismissed, then the NJAOC should be treated as a settling
defendant for such claims.

In support of this argument, Third-Party Plaintiffs direct
this Court's attention to the NJAOC's own concession that it
should be treated as a settling defendant through the following
admissions: (1) "[t]reating the dismissed public entity as a
settling defendant protects the public entity as intended by the
CLA;" and (2) "AOC must be treated as a settling defendant such
that, if at the time of trial any party has a viable claim for
contribution against [it], Third-Party Defendant will appear on
the verdict sheet for purposes of allocation of liability
only..." (ECF No. 79 at 13-16.)  NJAOC has failed to respond to
these arguments or positions.

Pursuant to the Tort Claims Act ("TCA"), notice of tort
claims must be presented "not later than the 90th day after
accrual of the cause of action."  N.J.S.A. 59:8-8.  The CLA
operates in a manner that is "roughly similar to its more
familiar counterpart, the Tort Claims Act, N.J.S.A. § 50:1-
1 to 59:12-3."  County of Hudson v. State, Dept. of Corrections,

23

208 N.J. 1, 14 (2011).  The CLA permits "suits based on
contracts to be filed against the State of New Jersey [and its
agencies], but requires compliance with its statutory terms as a
prerequisite for commencing any such litigation."  Id. at 13
(citing N.J.S.A. 59:13-5).  "The Act bars any contractual
recovery if the contractor 'fails to notify the appropriate
contracting agency within 90 days of the accrual of his claim'
absent leave of court."  Id. at 14 (quoting N.J.S.A. 59:13-5).
If a Notice of Claim is not filed within ninety days, a
plaintiff must file a motion for leave to file a late Notice of
Claim within one year from the date of accident.  N.J.S.A. 13:6.

     Here, Third-Party Plaintiffs have failed to timely serve a
Notice of Claim pursuant to the TCA or CLA regarding their
contribution and indemnification claims arising out of
Plaintiff's libel and conspiracy claims and their contractual
third-party claims.  NJAOC has failed to respond to Third-Party
Plaintiffs' argument that they have timely served their Notice
of Claims relating to their contribution and indemnification
claims arising out of Plaintiff's conspiracy claims on July 15,
2020.  Nevertheless, this Court disagrees with Third-Party
Plaintiffs' argument that they timely served Notice of Claims
and finds that their own citation to Jones v. Morey's Pier,
Inc., 230 N.J. 142 (2017) cuts against this argument.

     As explained by the Court in Jones, the date that starts

24

the 90-day time period for contribution and indemnification

claims is when the first plaintiff's cause of action accrues and

not when the plaintiff files his complaint as suggested by

Third-Party Plaintiffs.  The Court focused on both the plain

language of the statute and legislative intent in holding that

both initial and third party claims are barred unless the

statute notice provision is strictly complied with.  Id. at 155-

159.  As the Court noted:

> Were we to interpret N.J.S.A. 59:8-8 to permit
> a defendant to assert a contribution or
> indemnification claim against a public entity
> or employee months or years after the
> plaintiff's claim accrued, we would undermine
> the Legislature's intent: to permit public
> entities to promptly investigate claims,
> correct the conditions or practices that gave
> rise to the claim, prepare a defense, and
> assess the need for reserves.

Id. at 157.

In reaching its decision, the Court acknowledged the ruling

could have harsh outcomes:

> When N.J.S.A. 59:8-8 is applied to dismiss a
> defendant's cross-claim or third-party
> complaint against a public entity or public
> employee, it may deprive a defendant of its
> right to pursue a claim against a joint
> tortfeasor before the defendant is aware that
> the claim exists. As the Appellate Division
> observed in S.P., supra, a defendant "may not
> even learn that he has a potential
> contribution claim within this period, since
> the plaintiff may not file suit until well
> after the 90-day period." 319 N.J. Super. at
> 475, 725 A.2d 1142 (quoting Perello v. Woods,
> 197 N.J. Super. 539, 546, 485 A.2d 350 (Law

25

Div. 1984)).

Id. at 158.

Here, the latest possible date of accrual is December 12, 2019, the date Plaintiff (who has an incentive to assert the latest possible accrual date) alleges he first "learned the placement of a false record on NICS was a direct result of the conspiracy between the County Adjuster's office and Virtua." (ECF No. 68 at 11.)  Even if this Court were to accept this latest possible accrual date, Third-Party Plaintiffs still cannot successfully argue they timely served their Notice of Claims relating to the contribution and indemnification claims arising from Plaintiff's conspiracy claims because such notice was not served until July 2020, which is well past March 13, 2020, ninety days after December 12, 2019.

Accordingly, this Court will also dismiss Third-Party Plaintiffs' contribution and indemnification claims arising out of Plaintiff's libel and conspiracy claims and their contractual third-party claim.

The harshness of the 90-day accrual rule is not without a mitigating recourse.  It is undisputed by both parties that NJAOC should be treated as a settling defendant for purposes of liability allocation as recognized by the New Jersey Supreme Court in Jones.  The Court held that while an untimely Notice of Claim bars that defendant's claim for contribution and common-

26

law indemnification against the public entity, the dismissed
public entity is to be treated as a settling defendant for
purposes of liability allocation by the jury.  Id. at 149.  The
Court considered "whether the objectives of the Tort Claims Act,
the Comparative Negligence Act and the Joint Tortfeasors
Contribution Law are furthered by an allocation of fault" as to
the dismissed third-party public entity if the third-party
plaintiffs "present evidence at trial that negligent conduct by
the [public entity] was a proximate cause of [plaintiff's]
death."  Id. at 164.  The Court found that permitting such an
allocation "harmonizes and furthers the three statutes' separate
goals" and therefore held that the dismissed third-party
defendant would be treated as a settling defendant for purposes
of liability allocation.  Id. at 164-65; see also Mejia v. Quest
Diagnostics, Inc., 241 N.J. 360, 365 (2020) (recognizing that
even when a third-party defendant is "barred from the suit
pursuant to the notice-of-claims provision of the [TCA]" and
"relieved from participating at trial...the remaining defendants
[are] entitled to present evidence of their negligence").  "If
the jury allocates a percentage of fault to the [relieved
defendant], the trial court shall mold the judgment to reduce
the [remaining] defendants' liability to [the] plaintiffs in
accordance with the percentage of fault allocated to the
[relieved defendant]."  Jones, 230 N.J. at 169.

Based on the foregoing, both parties agree NJAOC should be treated as a settling defendant for purposes of liability allocation.  This Court finds no reason to disagree with the parties' position on this issue.  Accordingly, this Court will grant Third-Party Plaintiffs' request and order that they will be permitted to seek an allocation of fault at trial as to the NJAOC and the individual NJAOC employees with respect to the Third-Party Plaintiffs' contribution and indemnification claims arising from Plaintiff's libel and conspiracy claims as well as their contractual claims that must be dismissed for failure to serve NJAOC with timely Notice of Claims.

<u>**CONCLUSION**</u>

For the reasons stated above, the Court will grant Defendant Virtua's Motion to Dismiss and grant NJAOC's Motion to Dismiss.

An appropriate Order will be entered.

Date: February 23, 2021                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

28